UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY BOLIN and DONALD BOLIN, )
)
Plaintiffs, )
)
v. ) Case No. 4:17-CV-1903 RLW
)
HSBC MORTGAGE SERVICES, et al., )
)
Defendants. )

## MEMORANDUM AND ORDER

This pro se action is before the Court on motions to dismiss filed by the seven Defendants[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) and on a motion by Kimberly Bolin and Donald Bolin ("Plaintiffs") for leave to file a second amended complaint. With the exception of the motion to dismiss filed by defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), each motion is opposed.[2]

### Background

The nine-count amended complaint has its genesis in a mortgage obtained by Plaintiffs for the property at 5019 Meadow Drive, Imperial, Jefferson County, Missouri. The allegations in the complaint are, for purposes of the motions to dismiss, accepted as true[3] and are as follows.

In November 2004, Plaintiffs met with a mortgage officer from defendant First Option Mortgage ("First Option") about obtaining a mortgage for the Meadow Drive property. (Am.

---

[1]Three of the Defendants have joined in the motion to dismiss filed by HSBC Mortgage Services. Consequently, there are four motions to dismiss pending.
[2]Plaintiffs have indicated in their motion for leave to file a second amended complaint that they have no objection to MERS' motion. (Pls.' Mot. at 5, ECF No. 95.) MERS' motion to dismiss will be granted, and references in the amended complaint to any wrongdoing by MERS will be omitted unless otherwise necessary to a resolution of the remaining Defendants' motions.
[3]*See Tension Envelope Corp. v JBM Envelope Corp.*, 876 F.3d 1112, 1116 (8th Cir. 2017).

Compl. ¶ (V)(20), ECF No. 33.) First Option took their loan application, requesting only that they sign the application and explaining that the rest would be completed once documentation had been received. (*Id.*) The following week, First Option informed Plaintiffs that their mortgage had been approved through defendant Intervale Mortgage Corporation ("Intervale"). (*Id.* ¶ (V)(21)).

In December 2004, Plaintiffs closed on the Meadow Drive property at the offices of defendant Commonwealth Land and Title ("Commonwealth"). (*Id.* ¶¶ (III)(6), (V)(22)). The deed of trust and other documents listed Intervale as the lender and defendant Decision One Mortgage ("Decision One") as the servicer. (*Id.* ¶¶ (III)(5), (V)(21)). Plaintiffs "believed they were executing an adjustable rate note and mortgage for the Meadow Drive property." (*Id.* ¶ (IV)(A)). Intervale was allegedly the mortgagor and was listed as such on the deed of trust and the note. (*Id.* ¶¶ (III)(4), (IV)(A)). At the same time, Plaintiffs signed a second mortgage from Intervale. (*Id.* ¶ (IV)(A)). This was secured by a ten-year balloon note. (*Id.*) Defendant HSBC Mortgage Services ("HSBC") is allegedly the "[a]ssignee/original 'lender' named on the mortgage/deed of trust" and the servicer of the mortgage. (*Id.* ¶¶ (III)(1), (IV)(C)). "No notification of a right to rescission was ever implied or given to Plaintiffs." (*Id.* ¶ (IV)(B)). Commonwealth refused to allow Plaintiffs to read the loan documents before they signed them. (*Id.* ¶ (V)(67)).

In June 2005, Commonwealth issued title insurance on the Meadow Drive property. (*Id.* ¶ (V)(26)). This included a recording of the deed of trust; the documents had been altered, including the addition of a legal description of the property and of a notarized statement alleging Plaintiffs had agreed to such recording. (*Id.*) They had not, and were unaware of the changes until May 2013. (*Id.*)

In February and March 2012, Plaintiffs mailed HSBC "a Qualified Written Request and Debt Validation letter." (*Id.* ¶¶ (IV)(D), (V)(16)). HSBC failed to timely respond. (*Id.* ¶ (IV)(E)). HSBC also failed "to provide Plaintiffs written notice within 60 days after HSBC was assigned the original promissory note." (*Id.* ¶ (IV)(G)). Plaintiffs allege "they never received notice of the date of any assignment." (*Id.* ¶ (IV)(H)).

And, HSBC (a) "told Plaintiffs they qualified for a loan modification"; (b) "asked Plaintiffs to make trial payments for a period of time"; (c) "made false statements to Plaintiffs about the character and the amount that was due after payments were applied"; (d) "harmed Plaintiffs by refusing to create a permanent loan modification"; and (e) "caused the default by not applying payments made and by charging late fees when payments were not late." (*Id.* ¶¶ (IV)(I)(J),(L)-(N), (V)(12)). HSBC also "caused [a] default by a practice known as dual tracking so they could foreclose and steal the equity in the home." (*Id.* ¶ (IV)(R)).

The default was "[o]n or about December 1, 2011." (*Id.* ¶ (V)(7)). Plaintiffs had been attempting to obtain a permanent modification of their mortgage and had been told "they must be at least 60 days behind on their mortgage." (*Id.*) In February 2012, HSBC "extorted money from Plaintiffs by claiming to be putting funds towards a modification" and then not doing so. (*Id.* ¶ (V)(8)). Three times – once in June 2010, once in February 2011, and once in November 2011 – HSBC tried to impose an insurance policy on the deed of trust without authorization or need, as Plaintiffs' homeowners' insurance policy never lapsed. (*Id.*) And, HSBC reported falsely reported that Plaintiffs were late over a period of 2007 to 2012. (*Id.* ¶ (V)(13)).

In September 2012, HSBC "removed any record of any mortgage of any kind taken out by the Plaintiffs," which deception resulted in Plaintiffs being unable to purchase or rent another residence. (*Id.* ¶ (V)(14)).

3

In May 2013 and again in July 2013, HSBC and Richard L. Martin "filed, fabricated, forged and intentionally altered documents with the Record of Deeds in Jefferson County, Missouri." (*Id.* ¶ (V)(17)). In May, HSBC requested, and received, from MERS an assignment of the deed of trust. (*Id.* ¶ (V)(43), (44)). The assignment was allegedly from Intervale to HSBC. (*Id.* ¶ (V)(44)). Neither MERS nor Intervale had the authority to issue an assignment of Plaintiffs' mortgage. (*Id.*) Also in May, this fraudulent assignment was recorded by defendant Martin Leigh P.C. ("Leigh"), a law firm specializing in foreclosure proceedings. (*Id.* ¶¶ (III)(2), (V)(46)). HSBC then named Leigh as a successor trustee and recorded the assignment in July. (*Id.* ¶ (V)(46)).

In August 2013, Leigh was informed by letter of defects in HSBC's documents. (*Id.* ¶ (V)(11)). Leigh ignored the letter. (*Id.*) That same month, HSBC wrongfully foreclosed, with Leigh's knowledge and without standing, on Plaintiffs' residence. (*Id.* ¶ (V)(18)).

Plaintiffs fashion nine counts from the foregoing allegations. Count One is against HSBC and Leigh for a breach of fiduciary duty. The underlying acts are the default caused by HSBC in December 2011; the solicitation in February 2012 by HSBC of money for a modification; the three attempts by HSBC to force Plaintiffs to buy a homeowners' insurance policy they did not need; the consistent unmerited assessment by HSBC of late fees; the reporting by HSBC of false information to credit agencies; the removal by HSBC in September 2012 of any record of Plaintiffs' mortgage; and the disregard of Leigh to the letter sent on behalf of Plaintiffs about the defects in the HSBC documents. HSBC and Leigh argue that this count fails to state a claim because there was no fiduciary duty and, regardless, the claim is time-barred.

Count Two is against HSBC and Leigh for a breach of the implied covenant of the duty of good faith and fair dealing. This breach is evidenced by HSBC's failure to timely and accurately credit Plaintiffs' mortgage payments; HSBC's disregard of the qualified written request letter sent in February 2012; the forging, with Leigh, in May and July 2013 of documents filed with the Recorder of Deeds; and the wrongful foreclosure, with Leigh's awareness, in August 2013. HSBC and Leigh argue that the complained-of actions were permitted by the Deed of Trust contract and there is no loan modification contract.

Count Three is for fraud and collusion and is against all Defendants. Plaintiffs also cite the Missouri Merchandising Practices Act ("MMPA"), Mo.Rev.Stat. § 407.020. The underlying acts are those surrounding the 2004 loan application, mortgage, and closing and the 2005 alteration of recorded documents. Plaintiffs allege they were unaware of the 2004 acts until September 2017, including that the original loan application was sent to Decision One, not Intervale, for approval, and were unaware of the altered documents until May 2013. They further allege that they have only "recently learned that Intervale never lent them any money." (*Id.* ¶ (V)(22)). Because of the deception practiced when the mortgage was obtained and recorded, the loans are void and the foreclosure illegal. Defendants argue the allegations fail to include the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.[4]

Count Four is against HSBC and Leigh and is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1629d-f.

Count Five is against HSBC only and is for unjust enrichment. Specifically, HSBC was unjustly enriched by accepting payments that were not properly credited and charging, and

---

[4]Rule 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

receiving, late fees for payments that were not late. Additionally, HSBC fraudulently represented that taxes were not paid, although they had been up to foreclosure, and violated the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602 *et seq.*, by refusing to refinance or modify the terms of Plaintiffs' loan. HSBC contends that an unjust enrichment claim does not lie when the parties' relationship is governed by contract and the HOEPA claims are time-barred.

Count Six is against HSBC and Leigh and is for fraud upon the court. This count is premised on Plaintiffs' allegation about Leigh recording the fraudulent assignment in May 2013 and the assignment of a successor trustee in July. HSBC argues that Plaintiffs have fatally failed to allege a required element of there being no fault or negligence on their part and have failed to plead this claim with the necessary specificity.

Count Seven is against all Defendants and is for the infliction of emotional and physical distress. Movants note in the pending three motions to dismiss that Plaintiffs have failed to identify whether they are pleading intentional or negligent infliction of emotional distress. If the former, the allegations are insufficient; if the latter, Plaintiffs fail to allege a duty owed to them.

Count Eight is against HSBC for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* HSBC argues this count fails for lack of any allegation that the required notice of a dispute was given.

Count Nine is titled "Fraudulent Practices," is against all Defendants, and includes the earlier allegations. Movants argue that this count lacks the specificity required by Rule 9(b).

Plaintiffs request leave to file a second amended complaint. They argue that such is not untimely; that no new parties would be added; and that they have recently "obtained new and further evidence of fraud and collusion," including that they received a refinance rather than a

purchase loan. They state that a second amended complaint would resolve any question about the specificity of their allegations, "including in most cases, the specific persons, the places, dates and times, some of which only recently came into [their] possession." (Pls.' Mot. at 4, ECF No. 95.) Also, they anticipate that they will learn of additional relevant information after a disciplinary hearing scheduled for February 2018 on their complaints against the attorney who represented them in the state court foreclosure proceedings.

## Discussion

Rule 12(b)(6) Standard. "To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "'[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires [this] [C]ourt to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-79) (second and third alterations in original).

Additionally, "[t]hough pro se complaints are to be construed liberally, they must still allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (interim citation omitted). "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* at 915.

Count One: Breach of Fiduciary Duty. "To prove a breach of fiduciary duty under Missouri law, a plaintiff must establish, among other elements, that a fiduciary duty existed and was breached." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 894 (8th Cir. 2014). "Missouri law recognizes a fiduciary relationship between the trustee of a deed of trust and both the debtor and creditor." *Id.* But, "[t]he general rule in Missouri is that 'the relationship between a lender and a borrower is one of contractual obligation, not one of duty.'" *Jean-Gilles v. Fabiola Jean Gilles, Esq.*, 2014 WL 6751115, *7 (E.D. Mo. Dec. 1, 2014) (quoting *Kulovic v. BAC Home Loan Servicing, L.P.*, 2011 WL 1483374, *11 (E.D. Mo. Apr. 19, 2011)). A fiduciary relationship does arise between a borrower and lender, however, "where the borrower can show that it has become subservient to the dominant will of the lender." *Id.* (citing *Yoesef v. Farm Credit Bank of St. Louis*, 832 S.W.2d 325, 328 (Mo.Ct.App. 1992)). A borrower may allege a fiduciary relationship by showing that, due to the borrower's ignorance, the borrower has

> become subservient to the dominant will of another, that the property of the subservient person has come into the possession of management of the dominant person, that the subservient person has surrendered his independence, and that there has been some manipulation of the actions of the subservient party who has placed his trust and confidence in the dominant person.

*Yoesef*, 832 S.W.2d at 328 (rejecting claim of breach by lender of fiduciary duty when plaintiffs were experienced borrowers and had borrowed from lender for many years).

Liberally construing Plaintiffs' complaint, they sufficiently allege a breach of fiduciary duty by HSBC. They also allege a breach by the trustee, Leigh. *See Wivell*, 773 F.3d at 894.

HSBC and Leigh further argue that Plaintiffs' claim must still be dismissed because it was not filed within the five-year statute of limitations.

"As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie*

8

*v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). Missouri's five-year statute of limitations, Mo.Rev.Stat. § 516.120(4), applies to claims of breach of fiduciary duty. *White v. CitiMortgage, Inc.*, 864 F.3d 924, 927 (8th Cir. 2017).

HSBC argues that the relevant alleged breaches occurred in 2010; consequently, this action, filed in June 2017, is untimely.

"Generally, claims accrue 'when the damage . . . is sustained and capable of ascertainment.'" *Id.* (quoting Mo.Rev.Stat. § 516.100) (alteration in original). "Missouri law provides a more forgiving standard for 'action[s] for relief on the ground of fraud,' which are 'deemed not to have accrued until the discovery . . . of the facts constituting the fraud.'" *Id.* (quoting Mo.Rev.Stat. § 516.120(5)) (alterations in original). In *White*, the Eighth Circuit rejected a construction of "capable of ascertainment" that would require the statute to start running when the underlying acts *could* have been discovered. *Id.* at 927-28. Instead, the court held that Missouri law required that the phrase be given a practical construction, "according to which until [a] plaintiff has sufficient knowledge to be put on inquiry notice of the wrong and damages, th[e] standard is not met." *Id.* at 928 (quotations omitted) (alterations added).

Plaintiffs' allegations of wrongful acts by HSBC and Leigh occurred as late as August 2013. For purposes of HSBC's motion to dismiss, joined in by Leigh, these allegations are sufficient. Count One will not be dismissed.

<u>Count Two: Breach of Implied Covenant of Good Faith and Fair Dealing.</u> "'Missouri law implies a covenant of good faith and fair dealing in every contract.'" *Berringer v. JPMorgan Chase Bank, N.A.*, 16 F.Supp.3d 1044, 1048 (E.D. Mo. 2014) (quoting *Farmers' Elec. Coop., Inc. v. Mo. Dep't Corr.*, 977 S.W.2d 266, 271 (Mo. 1998) (en banc)). "'A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the

express terms of the agreement in a manner that evades the spirit of the agreement . . . and denies the expected benefit of the agreement.'" *Id.* (quoting *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo.Ct.App. 2012)) (alteration in original). "The covenant of good faith and fair dealing does not establish a general reasonableness requirement"; rather, unreasonableness "serve[s] only as evidence of subjective intent to undermine fulfillment of the contract." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (interim quotations omitted).

HSBC argues that the terms of the Deed of Trust gave it the right to do what it did. The Deed is not included in or attached to the complaint and is not part of the public record. The Court cannot, in a Rule 12(b)(6) challenge, accept HSBC's allegation as true. *See Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (per curiam) (when ruling on Rule 12(b)(6) motion, "the court generally must ignore materials outside the pleadings").

HSBC also argues that Plaintiffs have failed to plead the necessary elements of a loan modification contract, e.g., offer, acceptance, and consideration. Plaintiffs have alleged that HSBC offered a loan modification, they accepted such by making "trial payments," and HSBC used those payments for a purpose other than the modification. This Count also will not be dismissed.

Count Three: Fraud and Collusion. Liberally construing Plaintiffs' allegations in Count Three, they allege fraud in the inducement and a violation of the MMPA.

"[A] claim of fraud in the inducement requires a plaintiff to establish that:

(1) the defendant made certain material representations to the plaintiff;

(2) such representations were false when made;

(3) the defendant knew the representations were false;

(4) the representations were made with the purpose of deceiving the plaintiff;

(5) the plaintiff was, in fact, deceived;

10

(6) the plaintiff reasonably relied on the defendant's false representations in entering into an agreement; and

(7) the plaintiff suffered damages as a proximate result of the fraudulent misrepresentations."

*Argus Health Sys. v. Benecard Servs., Inc.*, 2011 WL 5570064, *2 (W.D. Mo. Nov. 16, 2011). "Fraudulent inducement is a subset of fraudulent misrepresentation." *Harvey v. CitiMortgage, Inc.*, 2011 WL 1226973, *5 (E.D. Mo. Mar. 29, 2011).

As noted above, "[c]laims of fraud must be pled under Rule 9 ... with particularity, including 'the time, place, and contents of false representations, as well as the identity of the persons making the misrepresentation and what was obtained or given up thereby.'" *Id.* (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). "'In other words, the party must typically identify the who, what, where, when, and how of the alleged fraud.'" *Id.* (quoting *BJC Health Sys.*, 478 F.3d at 917).

In their response to the motions to dismiss, Plaintiffs add allegations of who, what, to whom, when, where, and how. These additions are unavailing. The only "when" allegations are of events in 2004, allegedly not discovered until 2017. Regardless of when Plaintiffs discovered the 2004 deceptions, they knew at least by February or March of 2012 that HSBC was servicing their mortgage. It was to HSBC they addressed their correspondence about the mortgage, including their Qualified Written Request, and it was from HSBC they sought a loan modification. There are no allegations of any reliance by Plaintiffs upon the 2004 transactions within the applicable five-year statute of limitations, Mo.Rev.Stat. § 516.120(5).

Count Three shall be dismissed.[5]

---

[5] Plaintiffs also claimed Defendants' actions constituted wire fraud, mail fraud, and bank fraud and were violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). They include a reference to fraud in factum. *See Harvey*, 2011 WL 1226973 at *6 (quoting provision of Mo.Rev.Stat. § 400.3-305(a)(1)(iii) defining fraud in factum as "'fraud that induced the

11

Count Four: Fair Debt Collection Practices Act. "[T]he FDCPA defines a debt collector as 'any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Harvey*, 2011 WL 1226973 at *4 (quoting 15 U.S.C. § 1692a(6)) (second alteration in original). "'The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, *a mortgage servicing company, or an assignee of a debt*, as long as the debt was not in default at the time it was assigned.'" *Id.* (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1995)) (emphasis added). An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Assuming, without deciding, that the correspondence from HSBC and Leigh fell within the reach of the FDCPA, Plaintiffs' claim must still be dismissed because it was not timely filed. The complained-of correspondence is about the foreclosure, which allegedly occurred in 2013. This action was filed in 2017.[6]

In one paragraph of Count Four, Plaintiffs also claim that HSBC and Leigh violated the Truth in Lending Act. This claim also is untimely. *See* 15 U.S.C. § 1640(e) (claim for damages for violations of TILA subject to one-year statute of limitations).

Count Four shall be dismissed.

Count Five: Unjust Enrichment. "Under Missouri law, a plaintiff is entitled to restitution for unjust enrichment when (1) the defendant was enriched by the receipt of a benefit; (2) the

---

obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or essential terms).'" These conclusory claims fail for the same reasons as discussed above.

[6]In their response, Plaintiffs state they did not know or understand the violations until December of 2016. The correspondence at issue, however, was to them. A failure to recognize that the correspondence may have violated the FDCPA does not toll the statute of limitations.

enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit." *PlaNet Prods., Inc. v. Shank*, 119 F.3d 729, 733 (8th Cir. 1997). "The third element ... is considered the most significant and the most difficult of the elements." *Adams v. One Park Place Inv'rs, LLC*, 315 S.W.3d 742, 749 (Mo.Ct.App. 2010) (interim quotations omitted). Mere receipt of benefits does not establish the third element. *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo.Ct.App. 2008).

The allegations in Count Five are of interest payments, late fees, legal fees and drive-by property assessments, and payments for a modification which were never properly applied. The years of such range from 2005 to 2013.[7] HSBC argues this claim does not lie because its relationship with Plaintiffs is governed by contract.

"Missouri law does not allow a plaintiff to maintain an action for [unjust enrichment] when an express contract governs the subject matter for which recovery is sought." *32nd Street Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 955-56 (8th Cir. 2016). Plaintiffs do not disagree that the payments at issue are governed by contract. *See Cregan v. Mortg. One Corp.*, 2016 WL 3072395, *5 (E.D. Mo. June 1, 2016) (dismissing plaintiffs' claims against mortgage company of unjust enrichment based on allegations of over-charging of late fees and interest on grounds that such claims were governed by express contract). The claims of unjust enrichment based on interest payments, late fees, and legal fees and drive-by property assessments will be dismissed.

---

[7] There are also allegations of false statements about unpaid taxes and a refusal to refinance or modify the loan terms. These allegations do not include any reference to benefits to HSBC.

The Court notes, however, that HSBC has previously argued there was no loan modification contract. Therefore, Plaintiffs' claims of unjust enrichment arising from HSBC's acceptance of payments for modification will not be dismissed.[8]

Count Six: Fraud Upon the Court. Citing *Banks v. Ameren UE*, 2011 WL 864923 (E.D. Mo. Mar. 10, 2011), HSBC and Leigh argue this count must be dismissed because (a) Plaintiffs "had multiple opportunities to raise their current argument" and (b) the claim is not pled with the specificity required by Rule 9(b). (HSBC Mem. at 15, ECF No. 44.)

"This Court can entertain an independent action in equity to set aside a judgment for fraud upon the court where there is

> (1) a judgment which ought not, in equity and good conscience, ... be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented [a party] in the judgment from obtaining the benefit of his [claim]; (4) the absence of fault or negligence on the part of the [party seeking relief]; and (5) the absence of any adequate remedy at law."

*Id.* at *3 (citing *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir, 2010)) (alterations in original). "In *Superior Seafoods*, the Eighth Circuit reasoned that it could not 'characterize [a party] as being without fault given the multiple foregone opportunities to raise his current arguments.'" *Id.* (quoting *Superior Seafoods*, 620 F.3d at 879) (alteration in original). Because the plaintiff in *Banks* could have raised the alleged fraud at issue in the action in which it occurred, in the appeals therefrom, and in subsequent actions, but did not do so, the court dismissed the fraud upon the court claim. *Id.* at *4.

HSBC argues that *Banks* applies to Plaintiffs' claim because they could have, but did not, raise their allegations about the recording of the allegedly fraudulent assignment in state court. The only reference to a state court action before this Court is the two-paragraph, per curiam

---

[8]The issue of the statute of limitations was not raised in respect to this Count.

14

order in *HSBC Mortg. Servs. v. Bolin*, 519 S.W.3d 818 (Mo.Ct.App. 2017), affirming the trial court's order in an unlawful detainer action brought against Plaintiffs. This is insufficient for the Court to conclude on a Rule 12(b)(6) motion that Plaintiffs' fraud upon the court claim should be dismissed. *Cf. Torrey v. JPMorgan Chase Bank, N.A.*, 2015 WL 1955023 *3 (E.D. Mo. April 29, 2015) (dismissing fraud upon court claim on *res judicata* grounds after outlining the claims raised in the state court proceeding alleging wrongful foreclosure and detailing the disposition thereof).

HSBC further argues that the claim should be dismissed because it does not meet the standard of Rule 9(b). The Court disagrees. Plaintiffs allege who (HSBC, MERS, and Leigh), what (a request for and recording of a "fraudulent assignment of the deed of trust), where (the Recorder of Deeds Office for Jefferson County), when (May 10, 2013), and how (a request by HSBC for the assignment from an entity, Intervale, that allegedly had no authority to issue such and the recording of it by Leigh).

Count Six will not be dismissed.

<u>Count Seven: Intentional Infliction of Emotional and Physical Distress.</u> This count is against all Defendants.

> To establish a claim for [intentional infliction of emotional distress] under Missouri law, plaintiffs must allege (1) the defendants' conduct was extreme and outrageous; (2) the conduct was intentional or reckless; and (3) the conduct caused severe emotional distress that resulted in bodily harm. The defendant's conduct must be more than simply malicious or intentional conduct, and instead be so outrageous in character, and so extreme in degree, as to go beyond the possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Finally, the plaintiff must show the defendant's sole motivation was to cause emotional distress to the plaintiff.

*Brown v. City of Pine Lawn, Mo.*, 2018 WL 950211, *6 (E.D. Mo. Feb. 20, 2018) (interim quotations omitted). Although styled as against all Defendants, the Count fails to allege the

necessary motivation on the part of any Defendant. Indeed, the first paragraph of the Count attributes the motivation to greed.

To establish a claim for the negligent infliction of emotional distress under Missouri law,

> a plaintiff must plead the general elements of negligence—that is, "a legal duty of the defendant to protect the plaintiff from injury," a breach of that duty, proximate cause, and injury—as well as two additional elements—"that the defendant should have realized that his conduct involved an unreasonable risk of causing distress" and "that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant."

*Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017) (quoting *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo.Ct.App. 2001)). Plaintiffs do not allege that any Defendant owed them a duty. *See Foor v. Citi Mortg., Inc.*, 2016 WL 5799320, *3 (W.D. Mo. Oct. 3, 2016) (dismissing pro se complaint that failed to allege what acts the individual defendants "were accused of that could result in liability").[9]

Count Seven will be dismissed.

<u>Count Eight: FCRA.</u> Plaintiffs allege that HSBC has violated the FCRA by providing false information on their credit report.

> To prevail against a furnisher for violating § 1681s-2(b) [of the FCRA], a plaintiff must establish that: (1) he disputed the accuracy or completeness of information with a CRA [credit reporting agency]; (2) the CRA notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the CRA of the results of the investigation.

*Kaestner v. Diversified Consultants, Inc.*, 2018 WL 46578, *4 (E.D. Mo. Jan. 17, 2018) (citing 15 U.S.C. §§ 1681s-2(b), 1681i(a)(2)). "Notice of disputed information provided only by the consumer to the furnisher does not trigger the duties imposed by § 1681s-2(b)." *Young v.*

---

[9]Defendants argue that "[t]he claim of infliction of 'physical distress' does not exist." (HSBC Mem. at 16 n.13; Decision One Mem. at 7 n.5; Intervale Mem. at 7 n.5.) Assuming, without deciding, there is such a claim, it fails for the same reasons as does the claim for infliction of emotional distress.

*CitiFinancial Servs.*, 2017 WL 2334982, *2 (E.D. Mo. May 30, 2017). In the instant case, Plaintiffs have failed to allege that they notified a credit reporting agency of a dispute. *See Somlar v. Nelnet, Inc.*, 2017 WL 35703, *5 (E.D. Mo. Jan. 4, 2017) (dismissing FCRA complaint for similar deficiency). Nor do Plaintiffs allege in their response that they did so. Indeed, their response focuses only on their allegations about actions of HSBC.

Count Eight will be dismissed.

<u>Count Nine: Fraudulent Practices.</u> In this Count, Plaintiffs list allegations raised in other counts and title them "Fraudulent Practices." These allegations fail for the same lack of specificity evident in Count Three.

<u>Leave to File Second Amended Complaint.</u> Plaintiffs request leave to file a second amended complaint, alleging that there is no prejudice to Defendants because all Defendants have been served and have responded and that the Case Management Order issued before four of the seven Defendants were served; explaining that they had intended to do so earlier but the need to address the pending motions to dismiss precluded them from doing so; and arguing that, because they are pro se, the Court should instruct them on how their amended complaint is deficient and what they should do to repair it.

The Court's scheduling order established a December 8, 2017 deadline for filing amended pleadings. HSBC's Motion to Dismiss was filed on October 19, 2017. The supporting memorandum addressed all nine-counts of the amended complaint; subsequent motions to dismiss, addressing only several of the counts, did not raise any new challenges. Therefore, Plaintiffs were aware of the alleged deficiencies in their amended complaint at least eight weeks before the deadline for filing amended pleadings. The motion for leave to file a second amended complaint was filed on February 6, 2018 – eight weeks after the deadline. Moreover, even if

Plaintiffs had filed their second amended complaint as they originally planned – "immediately after January 1, 2018" – it would be after the deadline.

Although "'[t] he court should freely give leave [to amend a complaint] when justice so requires,'" *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016) (quoting Fed.R.Civ.P. 15(a)) (alteration in original), "[a] motion for leave to amend filed outside the district court's . . . scheduling order requires a showing of good cause," *Kmak v. American Century Cos.*, 873 F.3d 1030, 1034 (8th Cir. 2017) (interim quotations omitted). "The primary measure of good cause is the movant's diligence." *Id.* (interim quotations omitted). Absent this, prejudice to the nonmovant is generally not considered. *Id.* Plaintiffs' allegations of the need to response to other motions to dismiss do not describe any diligence. They had responded to HSBC's motion on November 17, 2017, and their subsequent responses to the other motions were primarily rephrasings of that earlier response.

Additionally, leave to amend a complaint may be denied on the grounds of futility. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015). Plaintiffs have failed to submit a proposed second amended complaint, thereby precluding a determination whether the amendment would be futile. *See Gilbert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (affirming district court's dismissal of count without affording plaintiffs opportunity to amend; plaintiffs had failed to submit proposed amended complaint and had simply requested leave to amend should the district court find their complaint insufficient).

Citing *Platsky v. CIA*, 953 F.2d 26 (2nd Cir. 1991), Plaintiffs argue it is this Court's duty to instruct them on what their amended complaint must allege so as not to be futile. The court in *Platsky* held that the district court had erred when dismissing a pro se complaint for naming federal agencies as the defendants rather than instructing the plaintiff on the correct form, i.e.,

naming the government officials, not the agencies. This narrow holding does not impose the burden on the Court suggested by Plaintiffs. Rather, "[a]lthough *pro se* complaints, however inartfully pleaded, are to be held to less stringent standards than formal pleadings drafted by lawyers, a district court should not assume the role of advocate for the pro se litigant, nor may a district court rewrite a [complaint] to include claims that were never presented." *Harvey*, 2011 WL 1226973 at *2 (interim quotations omitted).

## Conclusion

Liberally construing, but not rewriting, Plaintiffs' amended complaint, the Court finds that the allegations in Counts One, Two, and Six against HSBC and Leigh state a claim. The unjust enrichment allegations in Count Five arising from Plaintiffs' payments with the understanding they were to be applied to a modification of their mortgage also state a claim; the allegations arising from interest payments, late fees, legal fees, and drive-by property assessments do not state a claim.

Plaintiffs' allegations in Count Three, Seven, Eight, and Nine do not state a claim. Because defendants Intervale, Decision One, First Option, and Commonwealth are only named in Counts Three, Seven, and Nine, they will be dismissed.

Also to be dismissed is MERS. *See* note 2, *supra*.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion to dismiss of HSBC Mortgage Services and Martin Leigh, P.C. is GRANTED in part and DENIED in part. It is granted as to Counts Three, Four, Seven, Eight, and Nine and as to certain claims in Count Five. It is denied as to Counts One, Two, and Six, and as to certain claims in Count Five. [ECF No. 43]

**IT IS FURTHER ORDERED** that the motions to dismiss of Intervale Mortgage Corporation, Mortgage Electronic Registration Systems, and Decision One Mortgage are each GRANTED. [ECF Nos. 73, 85, and 90]

**IT IS FINALLY ORDERED** that the motion of Kimberly Bolin and Donald Bolin to file a second amended complaint is DENIED. [ECF No. 95]

An Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 5th day of March, 2018.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**